## KERR v. MELUM.

Where a person charged with fraud testifies, the broadest latitude of cross-examination should be permitted; but this rule does not apply where such a person not a party is called by plaintiff, who is seeking to prove fraud, and the defendant is a confederate

of the witness, and plaintiff does not ask the witness as to the intent with which a particular act was done.

The scope of the cross-examination of a witness is largely within the discretion of the trial court, and the refusal of a broad cross-examination of a witness who, though charged with fraud, was called by the plaintiff and is a confederate of the defendant, was not an abuse of that discretion.

Where a mortgagee purchased a restaurant from the mortgagor, the consideration being the satisfaction of the mortgage and the payment of another debt, and the restaurant was of greater value than the consideration, and the transaction occurred within four months of the mortgagor's voluntary petition in bankruptcy, it was a preference under the national bankruptcy act (Act July 1, 1898, c. 541, § 60, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]), providing that, if an insolvent within four months of bankruptcy transfers his property so as to enable one creditor to obtain greater percentage of the debt than the others, it is a preference, and section 70 having reference to the title of the trustee in bankruptcy.

Where the only mortgagee of an insolvent's property receives property in excess of the value of the mortgage, the transaction to the extent of the excess is a preference, for, while the mortgagee as the only one of his class has a right under the mortgage to payment prior to unsecured creditors, that right does not entitle him to receive property in excess of the mortgage, to the exclusion of unsecured creditors; and hence the excess may be recovered from him for the benefit of the others.

(Opinion filed, March 1, 1911.)

Appeal from Circuit Court, Beadle County. Hon. ALVA E. TAYLOR, Judge.

Action by George Kerr, as trustee in bankruptcy of the estate of Le Roy W. Flower, against John A. Melum. From a judgment for plaintiff, defendant appeals. Affirmed.

*Gardner, Fairbank & Churchill,* for appellant. *A. W. Wilmarth,* for respondent.

McCOY, J. The facts in this case are as follows: On the 21st day of November, 1906, one Le Roy W. Flower was the owner of the Owl Restaurant in Huron, and on that day sold the same to defendant, John A. Melum, for a consideration of $1,718. At the time of the sale, Flower was indebted to Melum in the sum of $1,000 past due, and secured by a chattel mortgage upon the restaurant property, consisting of counters, show cases, stoves,

dishes, cooking utensils, cash register, beds and bedding, chairs, and many other kinds of fixtures and utensils ordinarily used in the restaurant business. The real estate on which said restaurant was situated was owned by other parties from whom Flower rented the same. The said restaurant property, the subject of said sale, consisted of personal property only. One thousand dollars of the consideration for this sale was paid to Flower by the satisfaction and cancellation of the said debt for that amount due to Melum. At the time of this sale Flower was also indebted to the Standard Savings Bank of Huron in the sum of $718, and as a part of the consideration for said sale Melum agreed to and did pay the said debt of $718 to the bank, so that Flower, in fact, received no money or consideration at all on account of the sale and transfer of said restaurant to Melum other than the satisfaction of these two debts amounting to $1,718. The $718 debt to the bank was secured by a pledge of certain book accounts and the proceeds of an insurance policy, and, after the payment of the $718 by Melum to the bank, the bank delivered the proceeds of the insurance policy, $500 in cash, and the unpaid book accounts to, and the same were received and kept by, Melum as his property, excepting $50 of the proceeds of the insurance policy, which was turned over to Flower. The said Owl Restaurant property, the said insurance policy proceeds, and said book accounts were the only properties owned by Flower. Flower at the time of this sale was indebted to the total amount of $3,000, and was then insolvent. On the 1st day of February, 1907, and within four months after the making of said sale to Melum, Flower filed voluntary petition in bankruptcy, and was subsequently adjudged a bankrupt, and the plaintiff, George Kerr, was appointed trustee. Plaintiff then instituted this action, claiming that the said restaurant property at the time of said sale to Melum was of the reasonable value of $2,500, and that by the transaction of said sale it was intended to give Melum a fraudulent and unlawful preference over the other creditors of Flower, and with the intent to hinder and delay such creditors in the collection of their debts. Plaintiff, as such trustee, made demand on Melum for the possession of said

restaurant property and proceeds of said insurance policy and said
book accounts, and, upon refusal to deliver the same, brought this
suit against defendant to recover the value thereof of $2,500. De-
fendant, while admitting that he purchased said restaurant prop-
erty from Flower for $1,718, and paid for the same as above
stated, denied that any fraudulent or unlawful preference was in-
tended thereby, and also alleged that said transaction was bona
fide and in good faith, and that said property was in fact of much
less value than $1,718. The jury returned a verdict in favor of
plaintiff for $500. Defendant, as appellant, has brought the cause
before this court on appeal, assigning many errors, many of which
errors, assigned by the abstract, are not mentioned in appellant's
brief, and we shall therefore only consider those mentioned in the
brief.

Appellant, first, contends that the court erred in restricting
the cross-examination of Flower when he was called as a witness
for plaintiff, on the ground that, where fraud is charged and the
person so charged goes on the witness stand, the broadest latitude
of cross-examination should be permitted. While this is true as a
general rule, still we are of the opinion this rule has no application
under the circumstances of this case. If Flower had been called
as a witness by defendant, which he very properly might have
been, and while so acting as a witness for defendant had denied
any intention to defraud, then plaintiff might have availed himself
of the rule permitting the broadest latitude of cross-examination.
The reason for this rule seems to lie in the fact that generally
frauds are secretly committed, and the knowledge and facts and
circumstances thereof exist only in the minds of the perpetrators
thereof, and this broad latitude on cross-examination is justified on
the ground that it might afford a method for the discovery of such
fraud, but, where a plaintiff charging fraud, to prove some fact
material to his side of the cause, calls to the witness stand one of
the alleged perpetrators of such alleged fraud, although not a
party to the suit, but makes no inquiry of the witness as to the
intention with which an act testified to was done, such plaintiff
does not open the way for the defendant, who is also charged as a

participator in such fraud to cross-examine his alleged confederate in alleged fraud under this rule permitting broad latitude on cross-examination. If there actually was any fraud in the alleged transaction, the secrets and circumstances thereof were within the knowledge of the participators therein, and they were not in need of this broad latitude on cross-examination to discover their own fraud. Under such circumstances, the plaintiff should not be bound by the statements of such a witness on cross-examination, when plaintiff had not opened the way therefor. The permissibility of such broad latitude on cross-examination is very largely within the discretion of the trial court, and it clearly appears that the trial court under the circumstances of this case did not abuse such discretion by limiting the cross-examination of the witness Flower.

Appellant next contends that the sale from Flower to Melum did not constitute a preference or fraudulent conveyance. We are of the opinion that this contention is not well founded. The transaction of this sale in question is in violation of both sections 60 and 70 of the federal bankruptcy act of 1898 (Act July 1, 1898, c. 541, 30 Stat. 562, 565 [U. S. Comp. St. 1901, pp. 3445, 3451]). Conceding, without deciding, that Melum had the right to purchase this property from Flower to satisfy the debt of the bank as well as to satisfy his own debt, it would amount to a constructive fraud and an unlawful preference for Melum, within four months of the institution of the bankruptcy proceedings, to so receive property of an insolvent debtor far in excess in value of the amounts of the consideration given by him for the property. If this were permissible and did not constitute an unlawful preference or a constructive fraud, it would furnish a method by which an unlawful preference might in effect be obtained, and other creditors, whose debts were not canceled by such sale, fraudulently hindered and delayed in the collection of their just debts. The contention of respondent is that defendant should return to plaintiff for the benefit of the unsecured creditors the excess in value of said property over and above what it took to satisfy the debts which made up the consideration for the transfer from Flower to

Melum. In this contention we are of the opinion respondent is in the right. This position seems to be substantiated by the following authorities: In Lockren v. Rustan, 9 N. D. 43, 81 N. W. 60, it is held: "That if the creditor receives only so much property as is reasonably necessary to satisfy his debt, and receives it in good faith for that purpose, the fact that he may know that his grantor is actuated solely by a desire to defraud his other creditors will in no manner taint the transaction." Also in this connection see Collier on Bankruptcy (7th Ed.) p. 662: "An intent to prefer is not required to be specifically proven, but is conclusively presumed from the effect of the transaction in giving one creditor a greater percentage of his debt than any other creditor of a like class. If the effect of the transfer is to enable the creditor to receive out of the debtor's estate a larger percentage of his claim than other creditors of the same class, it constitutes a preference." In the case at bar, appellant, being the only mortgagee, was the only one in his class, and he had the right, under his mortgage, to receive sufficient in value of the mortgaged property to satisfy his debt, but he had the right to no more; and, when he received from the insolvent debtor within four months of the bankruptcy, property of value far in excess of the amount necessary to satisfy his debt, the transaction became, to the extent of the excess at least, tainted, and constituted an unlawful preference, no matter what the intention of Melum might have been. Collier on Bankruptcy, p. 657. The unsecured creditors of the insolvent debtor, Flower, were entitled to have the equity in this property over and above what it took to satisfy the liens thereon applied towards the satisfaction of their claims, and, when appellant received more than sufficient to satisfy his mortgage debt, he invaded the rights of the unsecured creditors in another class, and to the extent of this excess, at least, the transaction constituted an unlawful preference, and if Melum had knowledge, or was in possession of facts sufficient to put him upon inquiry that Flower was then insolvent, it constituted also a constructive fraud on the unsecured creditors. The pleadings and proof are sufficient to sustain plaintiff's cause of action on the theory of an unlawful preference or a constructive

fraud. The facts and circumstances shown in this case were sufficient to put the defendant upon inquiry as to Flower's insolvency at the time of the transaction in question. The very facts of this transaction itself were sufficient for that purpose.

Having carefully examined each of the assignments of error discussed in appellant's brief, we are of the opinion that the judgment of the circuit court should be affirmed.

WHITING, J., taking no part in this decision.